# CHARLESTON.

WICK *et al. v.* DAWSON *et ux.*

Submitted January 29, 1896—Decided April 1, 1896.

1. *Lex Fori*—MODE OF PROCEEDING.

   The law of the place where the suit is brought governs the remedy. This includes the mode of proceeding, the form of the judgment or decree, and the methods of carrying them into execution.

2. MARRIED WOMAN—SEPARATE ESTATE—PERSONAL DECREE.

   A claim against the separate etsate of a married woman could, in this state, be enforced only by a suit in equity, and by no personal decree, until the passage of section 15 of chapter 3 of Acts of 1893, p. 6, amending chapter 66 of the Code.

3. EQUITY PLEADING—BILL FOR RELIEF—DISCOVERY.

   Bills for relief may also contain prayers for the discovery of facts which are essential to the relief prayed for in the bill.

4. EQUITY—BILL IN EQUITY—ABSENT DEFENDANT.

   Although a bill be taken for confessed as to any defendant, the plaintiff may have an attachment against him, or an order for him to be brought in to answer interrogatories. Code c. 125, s. 48.

5. MARRIED WOMAN—SEPARATE ESTATE—*Lex Loci Rei Sitœ.*

   The liability of the separate real estate of a married woman to be subjected to the payment of claims against her is governed by the law of the state where such real estate is situated.

6. CONTRACTS—*Lex Loci Contractus*—PLACE OF PERFORMANCE.

   A contract is made where it is delivered, and the law of the state where it is made generally controls in respect to its validity; but, if it appears that it was made to be performed in some other state, then its validity is to be governed by the law of the place of performance.

7. JUDICIAL SALES—PURCHASER—CREDITOR.

   Land is sold under a decree, but before the sale is confirmed it is agreed, at the instance of the purchaser, between him and a creditor under the decree entitled to a part of the proceeds of sale, that if the latter will agree to the setting aside of the sale, he, the purchaser, will save the creditor harmless from all loss which he may sustain by reason of setting the sale aside and having the

property again offered. *Held*, such contract is not *per se* a fraud upon the due administration of justice, and, unless such fact is made to appear, it is binding upon and enforceable against the purchaser.

8. MARRIED WOMAN—HUSBAND AND WIFE—SEPARATE PROPERTY—VOLUNTARY CONVEYANCE.

If a married woman directly or indirectly convey her separate real property to her husband upon a consideration not deemed valuable in law, this is void as to her creditors whose debts shall have been contracted at the time it was made, if such creditors had the right, while the land was hers, to subject it or its rents and profits to the payment of their debts. As against existing creditors such voluntary conveyance is conclusively presumed to be fraudulent in law.

9. MARRIED WOMAN—HUSBAND AND WIFE—CREDITORS' REMEDIES.

The creditor is not compelled to go against the land as the land of the husband, because he also executed the contract of indemnity on which the suit is brought.

WHITE, JOHNSON, McCASLIN & CANNON and FORREST W. BROWN for appellants, cited 7 C. C. Rep. 499-503; 3 C. C. Rep. 587; 150 Pa. St. 164; 108 N. C. 377; 111 N. C. 234; 84 N. Y. 393, 399, 401; 24 S. W. Rep. 564; 125 Mass. 374; 65 Tex. 13; 24 Atl. Rep. 785; 41 N. J. L. 48; 78 Ill. 611; 82 Ky. 596-601; 52 Mo. App. 357-62; 1 Rev. Stat. Ohio (1890) §§ 3112, 3114; Sto. Confl. Laws (8th Ed.) § 556; 91 U. S. 406; 21 W. Va. 658; 29 W. Va. 365; 10 W. Va. 171; 13 W. Va. 572, 573; 19 W. Va. 366; 27 W. Va. 555; 37 N. E. Rep. 537.

GEO. BAYLOR for appellee, cited 13 Ohio St. 419; 30 Ohio St. 250; Code, c. 66, s. 11; Sto. Confl. Laws, §§ 175, 188; 16 How. 314; 23 W. Va. 338, 395.

HOLT, PRESIDENT:

On appeal from final decree of the Circuit Court of Jefferson county, dismissing plaintiffs' bill on demurrer, and refusing to permit a third amended bill to be filed.

The bill seeks to subject certain real estate situate in this state, in the county of Jefferson, as the separate property of Ida W. Dawson, the wife of defendant Charles L. Dawson, to the payment of the damages resulting from the breach of the following contract which she had executed

at Cleveland, Ohio, as the surety of her husband: "*The Society for Savings* v. *Nathaniel D. Moore, et al.* Agreement. The real estate described in the petition in this case having been advertised and sold to the undersigned, Charles L. Dawson, for forty seven thousand ($47,000) dollars, and the said Dawson desiring to have the sale set aside, and the property offered again for sale by the sheriff, and the defendants, Henry Wick & Co., objecting to such resale, it is agreed by the undersigned, Charles L. Dawson and Ida W. Dawson, his wife, that in consideration of the defendants (Wicks) consenting that said sale may be set aside, and the property again offered, that they, the said Charles L. Dawson and Ida W. Dawson, will indemnify said Wicks and save them harmless from all loss which they may sustain by reason of setting said sale aside, and having the property again offered ; and will pay to said Wicks whatever difference there may be in the amount which they would now realize if the present sale were confirmed and the amount bid paid, and what they may hereafter realize upon a resale of the property, so that said Wicks will not lose anything by consent to have said property again offered. Charles L. Dawson, Executor of Estate A. M. Harman, Deceased. Ida W. Dawson, Cleveland, O., May 11, 1889."

Plaintiffs claim that upon the case as made by this bill as amended, and by the third amended bill which the court refused to permit them to file, they were entitled to relief upon three distinct grounds: (1) A decree against Ida W. Dawson, it being an Ohio contract, which authorizes such a decree. (2) To set aside as voluntary the conveyance of the land to her husband and conveyance by Dawson to the *pendente lite* purchaser. (3) To a discovery of the personal estate of Mrs. Ida W. Dawson. (4) It is also contended that, conceding this contract to bind defendant Charles L. Dawson as his personal contract, it is joint, and, one of the parties executing it being a married woman, and it being necessary in this state, at the time this suit was brought, to sue in equity as to the separate estate of such married woman, the court, in order to avoid needless multiplicity of suits, will go on to a complete adjudication, giving relief against both. 1 Pom. Eq. Jur. §

181; *U. S.* v. *Union Pacific Ry. Co.*, 160 U. S. 1–52 (16 Sup. Ct. 190).

It is contended on the part of defendants that this contract, made by a married woman in the state of Ohio, will not bind, and can not be enforced against her separate real estate in West Virginia. So far as the law of this state bears on the case, it makes no such limiting distinctions. Chapter 66 of the Code (1887) determines what shall be the sole and separate property of a married woman; that she shall have the ownership as if she were a single woman, and the *jus disponendi* and the liability of her separate estate to the payment of her debts incurred during coverture are incidents of such ownership. *Hughes* v. *Hamilton*, 19 W. Va. 366; *Radford* v. *Carwile*, 13 W. Va. 572. No authority has been cited in support of such contention, and I take it for granted that none can be found denying any one the equal protection of the laws of this state solely because the contract sued on happened to be made in some other state. See *Bank* v. *Williams*, 46 Miss. 618. This is an Ohio contract, executed in that state, and to be performed there, and therefore the law of that state determines its validity. *Case* v. *Dodge*, 18 R. 1. 661 (29 Atl. 785); *Milliken* v. *Pratt*, 125 Mass. 374. And by the law of Ohio it is conceded to be valid. On this subject see *Hefflebower* v. *Detrick*, 27 W. Va· 16; *Baum* v. *Birchall*, 150 Pa. St. 164 (24 Atl. 620); *Taylor* v. *Sharp*, 108 N. C. 377 (13 S. E. 138).

The law of the place where the suit is brought governs the remedy. This includes the mode of proceeding, the form of the judgment or decree, and the methods of carrying them into execution (*Dulin* v. *McCaw*, 39 W. Va. 721 [20 S. E. 681]) and the law of the state where the land, the separate property of the married woman, is situated, must determine the question of its liability to be subjected to the payment of claims against her. Story, Confl. Laws (8th Ed.) § 590; 3 Am. & Eng. Enc. Law, 576. No real estate can be acquired by operation of law in any other manner, or to any other extent, or by any other means than those prescribed by the *lex loci rei sitæ.* 3 Am. & Eng. Enc. Law, 566. The contract being valid by the law of Ohio, the place where made, a suit on it in this state will be sus-

tained if it does not contravene the law or policy of this state at the time when the action was brought. The contract was also valid by the laws of this state when it was made, on the 11th day of May, 1889; also when this suit was instituted, in April, 1890. But defendant Ida W. Dawson did not appear until the 16th day of March, 1892. It seems by the bill that she signed the contract as surety of her husband for the benefit of an estate of which she was sole legatee, and by the act of 1891 it was provided that "no married woman shall become the security, indorser, or guarantor of or for her husband," *etc.* See Code 1891, p. 621, c. 66, s. 11. This section was repealed by act of February 16th, 1893. See chapter 3, Acts 1893, p. 6. It was was not intended that the act of 1891 should have any retroactive effect rendering void on that ground this and other subsisting contracts which were valid when made, and, since the act of 1891 has been repealed, it could not, after such repeal, be said that such a contract contravenes the law or policy of this state. But, besides, it appears from the facts alleged that it was entered into by the executor for the benefit of the estate of Harmon, and that Mrs. Dawson was the sole legatee.

Again, it is urged by the parties who procured this contract to be made that it is a fraud upon the administration of justice; that Charles L. Dawson was but a sham bidder, whose purpose was not to buy, but by such secret machinery to screw up the price, which was a fraud on the public, as common honesty requires that all should be fair and above board. See *Pennock's Appeal*, 14 Pa. St. 449; *Bexwell* v. *Christie*, 1 Cowp. 395; *Peck* v. *List*, 23 W. Va. 338, 392. Why did not this party defendant put in his answer pleading, and then proving in bar and defeasance of this contract its procurement by himself in fraud of the due administration of justice? No such fact appears on the face of the bill, nor is it a necessary inference from the contract itself, nor that the plaintiffs were *particeps criminis*. Other motives consistent with plaintiffs' honesty and with the honesty of defendants are at least open to plausible conjecture in the present attitude of the case. The wife desired to withdraw from so large and dangerous liability before

the sale should be confirmed. The purchaser found he was mistaken in the value of the property for some reason, we know not what. He may have supposed that he was purchasing for the estate he represented, and that he would hold it as personalty belonging thereto, but that there was danger of being held personally liable; or for some other reason we know not what. But we do know that such sales are often not confirmed on various grounds, by consent of parties or without it, without being open to the imputation of dishonesty on the part of any one. The bill made Charles L. Dawson a party defendant as an individual in his own right and as executor. He seems to be a necessary party in each character, and, if so, the rules of equity pleading require that he should be thus made and severally designated as a party defendant.

Plaintiffs, in their amended bills No. 1 and No. 2, allege that Charles L. Dawson is insolvent; that when said agreement was signed and delivered by defendant Ida W. Dawson she was the owner in fee simple of valuable real estate in Jefferson county, consisting of about one hundred and fifty acres, handsomely improved, which was her separate estate, having been conveyed to her by deed dated the —— day of 18—, which plaintiffs had the right to subject to the payment of the debt due from her to them; but that the said Ida, with the view to defeat them in any recovery, and with the idea that Charles L. Dawson was not individually bound under the agreement, on the 24th day of December, 1889, conveyed this estate to George Baylor without consideration, that he might convey the same to said Charles L. Dawson, her husband, which the said Baylor did on the same date; that said conveyances were voluntary, and fraudulent in law; that they had a *lis pendens* duly docketed, but thereafter Charles L. Dawson, who is now insolvent, conveyed the property to said *pendente lite* purchasers; and they pray that the deed to Baylor and the deed to Charles L. Dawson may be set aside as fraudulent, and that said separate estate of defendant Ida W. Dawson may be subjected to payment of their debt if other sufficient property can not be found; that she is entitled to considerable personal property under the will of A. M. Harman, deceased, which is

her sole and separate property; that it is within the jurisdiction of the court; that Charles L. Dawson, as executor of the will of Harman, has returned no inventory, and has made no settlement of his accounts; that husband and wife have concealed such property, so that plaintiffs are unable to specify the same; and they pray that said defendants may be compelled to answer, discover and disclose the same, *etc.*, and for general relief.

Bills for relief may also contain prayers for the discovery of facts which are essential to the relief prayed in the bill. 2 Bart. Ch. Prac. 306. As to bills of discovery see 2 Am. & Eng. Enc. Law, 198.

And although a bill be taken for confessed as to any defendant, the plaintiff may have an attachment against him, or an order for him to be brought in to answer interrogatories. No plea or demurrer shall be received after such attachment, unless by order of court upon motion. Code, c. 125, ss. 38, 48. She admits by her demurrer that she is guilty as charged of the fraud in law of being generous to her husband before being just to her creditors, but in argument points out how much better it is for plaintiffs to go against the land as the property of her husband. But plaintiffs claim the choice of ways, and, as under the statute of this state her indirect, voluntary conveyance to her husband is taken and held to be conclusively fraudulent as to this debt, they prefer to take the safe and sure, rather than the better way pointed out by her, for fear that it may be beset with the danger and delay of his denying all personal liability, and of the land, as his, being taken by older and paramount liens; whereas against the wife they have a lien from the time of filing their bill. *Hughes* v. *Hamilton*, 19 W. Va. 366; *Howe* v. *Stortz*, 27 W. Va. 555.

And if she is entitled to the personal property which it is charged she conceals, I fail to see why she may not be compelled to discover the same. Amended bill No. 3, which was rejected, alleges that the agreement sued on purports upon its face to have been executed in the city of Cleveland, in the state of Ohio; that by an act of the legislature of Ohio, passed in the year 1884, the separate estate of the wife shall be under her sole control, and that she

may contract to the same extent and in the same manner
as if she were unmarried; and that by an act passed in 1887
it was enacted that husband and wife may enter into any
engagement or transaction with any other person which
either might if unmarried, *etc.* It is true that under sec-
tion 4 of chapter 13 of the Code the court is required to
take judicial notice of the laws of other states and coun-
tries. Still it does so as matter of fact, and may consult
any printed book purporting to contain, state, or explain
the same; and consider any testimony, information, or ar-
gument that may be offered on the subject; so that this
amended bill might be of service, and could do no harm.
And it is still usual to allege such laws as facts, for as such
they are put in evidence. Why, then, may they not be
alleged in the pleadings? For the courts of every country
will administer justice according to its own laws unless a
different law be shown to apply. *The Scotland,* 105 U. S.
24. It seems to me, therefore, taking this bill as amended
to be true in all its material allegations that it makes a
case justifying the relief prayed for, because: (1) The con-
tract sued on does not appear to be obnoxious to the charge
made in argument of being a fraud on the due administra-
tion of justice. (2) It is valid according to the laws of the
state of Ohio, where it was made, and where it was *prima
facie* to be performed. (3) In the matter of the wife sign-
ing it as surety, it was, when made, not repugnant to any
law of this state, nor to any law when the suit was insti-
tuted, and at a time when by the law of this state she could
charge it as principal or surety for her own benefit or that
of another. *Patton* v. *Bank,* 12 W. Va. 587. (4) And,
conceding her to be but a surety, the statute of this state
making such contract of suretyship on the part of the wife
absolutely null and void was both enacted and repealed
*pendente lite,* and was not intended to be retroactive. (5)
The suit to enforce this contract against the separate estate
of the wife was by the law of the forum properly brought
in a court of equity [*Skidmore* v. *Jett,* 39 W. Va. 544 (20 S.
E. 573)] and is not in contravention of public policy. (6)
The tract of land sought to be charged in the hands of the
husband with the payment of the debt of the wife is so

chargeable, because the conveyance thereof from her to him was voluntary, and for that reason, under our statute, conclusively presumed to be fraudulent as to plaintiffs' debt, which had been previously contracted; not fraudulent in fact, for the bill makes no charge that in the making of it there was any falsehood said or done with intent to deceive, no guilty knowledge, only that the wife, in being generous to her husband before being just to her creditors, would inflict a like injury if her conveyance were permitted to stand. (7) Now, since all parties are competent witnesses, discovery is less needed, and therefore less frequently asked by technical bills of discovery, which have in large measure been superseded in practice by other methods of ascertaining facts from parties. Still, interrogatories more or less formal are common enough parts of bills for relief in aid of the ascertainment of material facts, as illustrated by this case. To go upon the personal property of the wife first might not only pay plaintiffs' debt, but relieve altogether the land of the husband conveyed to him by voluntary conveyance. What good would it do these plaintiffs to have it taken for confessed that Mrs. Dawson has personal property liable to this debt, but unknown as to the particular character, value, amount, and location because it is concealed by husband and wife? Plaintiffs have the right to a discovery by answer in aid of the ascertainment of the wife's personal estate, and to charge it with the payment of their claim, no matter what other independent means and methods of proof there may be.

There are perhaps some other points of practice that might be noticed, but they have no special bearing, are not raised or discussed, and are therefore passed over.

We are of opinion that the bill as amended is sufficient in law, and that defendants' demurrer ought to have been overruled, and the defendants ruled to answer. Reversed and remanded.