## CHARLESTON.

Davidson, *Admrx. Etc.,* v. Browning.

Submitted November 19, 1913.    Decided November 25, 1913.

1. Limitation of Actions—*What Law Governs—Non-resident Debtor.*
   In an action on a writing evidencing indebtedness of a resident of another state or country to a resident of this state, made in such other state or country, while the creditor resided here, and specifying no place of payment, the statute of limitations of this state, not that of the state or country in which the contract was made, applies. (p. 277).

2. Same.
   This clause of sec. 18 of ch. 104 of the Code of this state, "And upon a contract which was made and was to be performed in another state or country, by a person who then resided therein, no action shall be maintained after the right of action thereon is barred by the laws of such state or country", is founded on the decision in *Huber* v. *Steiner,* 4 Moore & Scott 328, and contemplates those cases in which the contract or obligation was expressly made payable in the state or country in which the debtor resided at the time, and those in which the facts and circumstances disclose intent to make it payable at such place. (p. 280).

3. Payment—*Action by Administrator—Evidence.*
   In an action by an administratrix for the recovery of money due on a contract, checks of the debtor subsequent in date to the contract and bearing the endorsement of the creditor and also memoranda indicative of intent to apply them on the debt sued for, are admissible as evidence of payment. (p. 282).

4. Witnesses—*Competency—Transactions With Decedent.*
   If the debtor has signed such checks by a name other than his own, as "The Browning Mines by J. S. B.", the defendant is a competent witness to prove his custom or habit of paying his personal debts by checks so drawn and signed. (p. 282).

Error to Circuit Court, Mercer County.

Action by Lizzie M. Davidson, administratrix, etc., against James S. Browning. Judgment for defendant, and plaintiff brings error.

*Reversed and Remanded.*

*B. W. Pendleton, Ross & Kahle* and *R. Kemp Morton,* for plaintiff in error.

*W. J. Henson* and *Harold A. Ritz,* for defendant in error.

POFFENBARGER, PRESIDENT:

The trial court having instructed the jury that the due bill sued on in this action was barred by the statute of limitations and that they should therefore find for the defendant, there was a verdict and judgment in accordance with the instruction. This ruling raises the principal question in the case.

A. C. Davidson, the plaintiff's decedent, residing in this state, sold to J. S. Browning, residing just across the line in the state of Virginia, 33 head of cattle and one mule, March 1, 1903, for the sum of $1,000.00, evidenced by a due bill, reading as follows: "Due A. C. Davidson $1,000.00 for 33 cattle and 1 mule. J. S. Browning. 1st March, 1903." The defendant introduced evidence tending to prove Davidson had driven the cattle and mule to Browning's farm in Tazewell County, Virginia, and sold them there. The plaintiff introduced evidence tending to show Browning had bought them at Davidson's farm in West Virginia. The defendant's theory of the case, adopted by the court and embodied in the instruction, is that the contract was made in Virginia and to be performed there, and the remedy thereon in this state is barred by the five year statute of limitations of the state of Virginia under the following provision of section 18 of chapter 104 of our Code: "And upon a contract which was made and was to be performed in another state or country, by a person who then resided therein, no action shall be maintained after the right of action thereon is barred by the laws of such state or country."

The rule of comity, unaffected by statute, applies the law of the forum or place in which the action is brought in all matters pertaining to the remedy, and the statute of limitations thereof, not that of the state or country in which the contract was made, governs; whether the period of limitation in the state in which the contract was made be longer or shorter than that of the state in which the action was instituted. *Urton* v. *Hunter, Harris & Co.,* 2 W. Va. 83; *Jones* v. *Hooks,* 2 Rand. 303; Wood Stat. Lim. (3 Ed.) sec. 8; Boswell Lim. & Adv. Pos., sec. 347; Minor's confl. Laws, sec. 210; Story's Confl. Laws, sec. 576, p. 793; Wharton Confl. Laws, sec. 535.

But this rule is modified and limited by the statute just quoted. Actions on contracts made and to be performed in another state or country are goverened in the courts of this state by the statute of limitations of the state or country in which the contracts were made and to be performed. To fall within this limitation upon the general rule, a contract must have been made in another state or country and required to be performed there. The rules of construction do not authorize any interpretation or application of the limitation variant from its terms or inconsistent therewith, and literally it applies only to contracts which were made and were to be performed in another state or country. Therefore, if the trial court was right in assuming the contract sued on here to have been in the state of Virginia, the instruction was nevertheless wrong, unless it was also to be performed there.

The condition prescribed by the limiting statute pertains to the place in which the contract was made and in which it is to be performed. Place of performance, as mentioned in the authorities, sometimes relates to the manner of performance, the coin or money in which the obligation is to be discharged, the rate of interest and similar matters, parts of its obligation, the substantive law of the contract, and has nothing to do with the matter of remedy. The manner of performance is ordinarily determined by the law of the place in which the contract was made, and, in that sense, it is the place of performance, the place whose laws govern the manner of performance. To illustrate, the law of the place where the contract is made determines the rate of interest when the contract specifically gives interest without fixing the rate. Kent's Com. m. p. 461. It thus carries the rate of interest of the place in which it was made, operates under the law of that place and is performed by it. In that sense, the place in which it was made is the place of performance, but not the place of performance in the sense of execution, payment of the money in the cases of contracts for such payment.

The limiting statute does not deal with the manner of performance of the contract nor with the substantive law thereof in any sense. It has to do only with the remedy and the place in which the contract is to be carried out or finally executed. It applies the law of limitation of the foreign

state, if the debtor made his obligation there and bound himself to perform it there and thus impliedly absolved himself by his contract from any duty to perform elsewhere. If he obligates himself to pay generally, he does not so limit it, and he may be called upon to pay anywhere. In that event, the contract is not one to be performed, in the sense of payment, in the state or country of his residence. "When a debt is contracted in a foreign country, it is not to be deemed exclusively payable there, unless there is in the contract itself some stipulation to that effect. On the contrary, a debt contracted in a particular country, and not limited to a particular place of payment, is by operation of law payable everywhere, and may be enforced wherever the debtor or his property can be found." Story Confl. Laws, sec. 329; *Blake* v. *Williams,* 6 Pick. 286, 315; *Railway Co.* v. *Sturm,* 174 U. S. 709; 2 Parsons Cont. (8 Ed.) 702. "And as no place of payment is mentioned, the legal construction of the contract is that the money is to be paid where the obligee resides or wherever he may be found. His residence being in England at the execution of the bond, that must therefore be considered the place of payment, for the purposes of determining the question where that part of the contract is to be performed." Chancellor Walworth in *Chapman* v. *Robertson,* 6 Paige Ch. (N. Y.) 627, 31 Am. Dec. 264.

The text quoted from Minor on Conflict of Laws, section 159, page 378, of which the *lex loci solutionis* is the subject, uses the place of performance in the sense of the obligation of the contract or manner of performance, and not of the place of payment or the place in which the stipulated act is actually to be done, as the authorities cited in supoprt of it will show. All of them determine questions of obligation and rights under the contracts. In *Pritchard* v. *Norton,* 106 U. S. 124, the validity of the contract and its binding force were the questions determined. *Clark* v. *Searight,* 135 Pa. St. 173, involved the rate of interest. *Tenant* v. *Tenant,* 110 Pa. St. 478, involved the right of a surety to discharge his liability by notice to the creditor to sue the principal debtor. In *Barrett* v. *Dodge,* 16 R. I. 740, the questions determined were the liability of the maker of a note and the construction of the instrument. *Bell* v. *Packard,* 69 Me. 105, involved the ques-

tion of the power of a married woman to become the surety of her husband. *Lex loci solutionis* covers a much broader field than that to which the statute under consideration applies. It is a phrase by which courts and text writers indicate the law with reference to which parties have contracted and which they are, therefore, deemed to have embodied in their contract. Litterally it means the law of the place of solution, the law in the light of which the contract is to be read to determine the rights of the parties, and that does not govern the remedy in a different state or country.

The statute here under consideration does not deal with any of these matters. It pertains to the remedy only and its purpose is to be sought in its terms and such additional light as may be found elsewhere. It appears in the Code of 1849, ch. 149, sec. 17, and was recommended by the Revisors in their report at page 746. A note appended by them says: "This conforms to the decision in *Herbert* v. *Sterner*, 4 Moore & Scott 328; 30 Eng. Com. Law Rep. 348." The style of the case is *Huber* v. *Steiner*. It may be examined for indication of the purpose of the statute. It involved an action upon certain promissory notes, made by the defendant at a place called Mullhausen, in Upper Saxony, in 1813, in favor of the plaintiff, and both parties then resided in that country. The action was brought on them in England in 1833. The defendant plead the general issue and the statute of limitations. Then the defendant asked for a rule on the plaintiff to show cause why he should not be permitted to plead further, that in the country in which both were domiciled at the time of the making of the notes and for more than five years after they became due, there existed a law similar in its provisions to the English statute of limitations, limiting the right of action to five years, and the court awarded the rule and made it absolute, thereby permitting a plea of the foreign statute of limitations. In awarding the rule, Chief Justice Tindal said: "It is so manifestly reasonable that parties should not be encouraged to come here and avail themselves of a law different from that which prevails in their own country, and thereby seek to obtain a different measure of justice after having for so many years slept upon their rights, that I think we ought to give the defendant the means of setting

up the proposed defense.'' It was apparent to the court
that the contract was not only made in a foreign country, but
was also intended to be performed there in the sense of pay-
ment therein; for both parties to it resided there at the time
it was made and continued to do so until after the notes
became due, and until after a right of action thereon had
been barred.  The substance and effect of the decision is
that the foreign statute of limitations is applicable to actions
on contracts made in a foreign country and to be fully and
actually performed there, and the residence of both parties
in the foreign country at the time of the making of the
contract and until after payment should have been made, is
sufficient to show intent so to perform in the foreign country,
or, in other words, is sufficient to repel any presumption in
favor of intent to perform elsewhere.  Having been drawn in
view of this decision and for the express purpose of embody-
ing the law thereof, the statute should be interpreted as hav-
ing adopted the proposition there announced and applied.
Hence it does not contemplate application of the foreign
statute of limitations in an action upon such a contract as is
shown here.  In this case, the plaintiff resided in the state of
West Virginia and the contract may be considered, for the
purposes of this discussion, as having been made in the state
of Virginia.  It was not expressly made payable there and
no circumstances are disclosed from which intent to make it
so can be inferred.  On the contrary, the circumstances nega-
tive and repel such an inference.  The manifest purpose of
the statute is to apply the bar of the foreign law against
citizens of the state, as to contracts for the payment of money,
only when they have elected to take securities therefor
expressly made payable in another state or country, or when
both parties reside there at the date of the making of the
contract.

This conclusion makes obvious the error of the court in
giving the peremptory instruction to find for the defendant;
and also in refusing one requested by the plaintiff, hypo-
thetically submitting to the jury the facts herein indicated
as contended for by her, and requiring a verdict in her favor,
if the jury should find the facts in accordance with her claim,

unless there was evidence of payment sufficient to take the case to the jury on that question.

As evidence of payment, the defendant introduced, over objection, two checks, one for $500.00, dated June 10, 1903, and the other for $250.00, dated May 5, 1905, both signed "The Browning Mines by J. S. Browning", and payable to A. C. Davidson. The first bore this memorandum "For Cattle" and the other "On a/c". Then the court permitted him to testify, over objection, that he was the Browning Mines and paid his personal indebtedness with checks so drawn. These checks bear the endorsements of Davidson and so prove his receipt of money, and were admissible if they can be regarded as Browning's checks. He was permitted to show they were by his own testimony as to his method of doing business. Under principles applied in *Fouse* v. *Gilfillan,* 45 W. Va. 213, he was a competent witnese to prove his method of doing business. That was not a personal transaction between him and plaintiff's decedent. In *Owens* v. *Owens,* 14 W. Va. 88, Judge HAYMOND said: "There are no doubt many facts and circumstances, to which a party to a suit against an administrator, &c., may testify as a witness in his own behalf, which transpired or occurred during the lifetime of the decedent, and which may in some respects be material and cannot be said to be transactions or communications had personally with the decedent." To allow the defendant to testify to his manner of paying his personal obligations enables him only to say these checks represent his money or money he had the right to use. Such testimoney does not prove payment nor directly tend to do so. That must be made out by other evidence. This testimony does not fall within the reasoning of the court in *Owens* v. *Owens,* cited; *Caldwell* v. *Prindle,* 11 W. Va. 307; and *Anderson* v. *Cranmer,* 11 W. Va. 562.

As the due bill represented the purchase money of cattle and one of the checks purported on its face to be a payment for cattle and the other to be a payment on account, they were admissible as evidence of payment, to have such weight as the jury saw fit to give them.

In view of this evidence the court did not err in refusing to give the instruction requested by the plaintiff. Ignoring the evidence of partial payment, it would have been mis-

leading.. As framed it purported to give right to a verdict for the entire debt.

The oral testimony relating for the most part to the place of the making of the contract gave rise to several objections and exceptions to statements admitted, which need not be considered, since our conclusion as to the construction of the statute of limitations in view of which they were admitted, renders them immaterial, and there will be no occasion for an attempt to introduce them on a new trial.

In rebuttal of the evidence of payment, the record of an action in Virginia between the parties to this case on a note was introduced by the plaintiff, to show the $500.00 check was credited on that note, and the attorney who conducted that case was introduced as a witness. To a statement made by him to the effect that he had written letters to the defendant and his attorney about the due bill, the court sustained an objection, and this ruling is complained of. What he wrote them was not evidence and he did not avow possession of any admissions of theirs or purpose to prove any. The objection was properly sustained and the record discloses no refusal of the court to permit the witness to give further testimony.

For the error noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*